## MARY E. FEELEY, EXECUTRIX,

## v.

## MARY M. THEWLIS.

*Landlord and Tenant—Trespass—Action to Recover Value of a Crop of Rye.*

In an action of trespass to recover the value of a crop of rye, the parties both claiming to be tenants of the same premises, it is *held:* That the questions whether the plaintiff, who sowed the rye, became the tenant of the owner by sub-letting the premises, and whether said premises were re-let to her, were for the jury; that the arrangement to allow her to sow the rye was a renting, if the agent of the landlord was authorized to make it; that she did not become the tenant of the defendant; that the defendant had sufficient notice of the plaintiff's rights; and that there was no error in the instructions.

[Opinion filed January 7, 1888.]

In error to the Circuit Court of Will County; the Hon. CHARLES BLANCHARD, Judge, presiding.

Messrs. HALEY & O'DONNELL, for plaintiff in error.

Messrs. OLIN & PHELPS, for defendant in error.

LACEY J.   On the 1st day of August, 1881, one James Bradford, the son of the defendant in error, by written lease under seal, rented of Lucy J. Sleight an eighty-acre tract of land for a term of two years commencing May 1, 1881, and terminating May 1, 1883.   The amount of rent reserved was $125; $60 for the first year and $65 for the last.   The lease, by its terms, was not assignable.

James Bradford, the son, was unmarried and resided with his mother.   He and his younger brother worked on the farm, and his mother, defendant in error, paid the hired help and for the first year had the hay.   James paid $12 for the first year's rent and the defendant in error the rest.   The second

year defendant in error occupied the farm and James had nothing to do with it but worked by the month. Defendant in error, for the second year's rent, paid a horse to Edward Sleight, the son of Lucy J. Sleight, who had given her son all the rent he might collect on the lease. The rent was then receipted for in full by him up to the time the lease, by its terms, expired.

This payment was made by defendant in error at her residence in August, 1882. It is claimed that at that time an agreement was entered into by and between the defendant in error and Edward Sleight, on behalf of his mother, that he was to rent her the land for one or four years and he was to come down the next spring and "let her have it." It was then agreed that she might go ahead and put in rye that fall which, in the course of nature, would be harvested in the summer of 1883. The rye was sown in the fall of 1882, with the knowledge of John B. Feeley, since deceased. In April, 1883, the rye was up the usual height.

On the 1st day of May, 1883, John B. Feeley, by written lease, rented the same land for a term of five years, commencing May 1, 1883, from Lucy J. Sleight, he agreeing to "defend all suits that might be brought against him questioning the title to said property, by one James Bradford or one Mrs. Thewlis, or the right of the said Feeley to quietly enjoy the same."

John B. Feeley harvested this rye sown by defendant in error, on the 21st July, 1883, after being notified by defendant in error not to do so, and also cut the grass on the land and thereafter took and retained possession. This suit was brought in trespass to recover for the value of the rye and crops by defendant in error against said Feeley, who has since died, and the plaintiff in error appointed administratrix of his estate. The jury found a verdict in favor of defendant in error for the value of the rye crop and hay for $204.22, and she remitted all but $78.22, the value of the rye crop, and judgment was given against plaintiff in error for that amount, from which judgment this writ is sued out.

The point is made by plaintiff in error that the defendant in error could not acquire such possession of the premises as

would authorize her to maintain an action of trespass, the lease containing a covenant that the term should not be sub-let.

The lease of James Bradford being under seal could not be changed by any parol understanding during the term, and that there was no surrender of the lease; that the sowing of the crop in the fall of 1882, which those holding under the lease knew would not mature before May, 1883, conferred no rights upon them against the owner and subsequent purchaser; citing Breher v. Reese, 17 Ill. App. 545.

It is further insisted that the verdict was against the weight of the evidence, and that Feeley was entitled to occupy the position of landlord to defendant in error; that the defendant being ousted of possession by Feeley, therefore, she could only recover for the damages occasioned at the time of such ouster, and not for what was done afterward by Feeley in possession until re-entry; citing Smith v. Wunderlich, 70 Ill. 426, and Gould v. Sternburg, 4 Ill. App. 439.

Also it is insisted that the defendant in error's instructions, 3 and 4, were erroneous.

All of these objections, except that made to the defendant in error's instructions, may be generally classed under the general objection that the verdict was contrary to the weight of the evidence, and may be treated in that light. It is not entirely certain what position the defendant in error occupied toward the lease given her son; whether as an assignee of the lease by him to her by Mrs. Sleight's consent, or whether she was operating under her son without becoming the tenant herself. The evidence might justify a finding by the jury either way.

The fact that the lease forbids sub-letting would make no difference if the landlord, Mrs. Sleight, either expressly or impliedly gave her consent to sub-letting after the lease was executed, and this would be for the jury to determine from all the facts and circumstances in evidence. Edward Sleight received the rent for 1882, from defendant in error, and he was the agent of his mother to receive such rent, as all agree.

Whether he was the agent of his mother to re-let the premises, either to defendant or to James Bradford, is a disputed

question and is denied by him and Mrs. Sleight, yet there are circumstances going to show that he was her agent. The first letting was effected through his agency and he collected part of the rent, and then the notice given by Lucy J. Sleight to James Bradford and defendant in error, dated 18th June,1883, by the knowledge and procurement of Feeley, that unless they paid the rent, $250, within five days, she would terminate the lease, is an acknowledgment that there was some kind of a lease then existing other than the one that expired May 1, 1883.

This evidence the jury had before them, and it tended strongly to show two things: 1st. That there was a tenancy then existing that Feeley and Mr. Sleight both recognized, and that the defendant in error had possession of the land. If her son had the authority to rent the land, who knew that fact better than Mrs. Sleight? Suppose the $250 had been paid within the five days, what would have become of Feeley's lease? If the jury found that Edward Sleight had authority to rent the land in July, 1882, and Mrs. Thewlis was not occupying the land under her son's lease, then the arrangement to allow her to sow the rye that fall would be a renting to her without reference to the former lease, her son abandoning it for the benefit of his mother, and at the same time an implied agreement that she should at least hold the land till she could harvest the rye, and it would not matter whether the agreement, if there was one, to rent for one or four years was carried out or not.

The jury were justified in finding that to be the state of the case, and also that defendant in error was never fully dispossessed of the premises until after. the rye was harvested by Feeley, so that the point of law raised could not apply.

As to Feeley having been the landlord of defendant in error, it may be remarked that she never attorned to him her term, and he gave her no notice, but insisted on taking possession of the land with all the crops, and in this suit made no effort to recoup his rents, if he had any claim for rents.

Instruction number three is good so far as the notice of defendant in error's lease is concerned (that being the portion

complained of), as Feeley did know that defendant in error put in the crop of rye and had notice not to cut it. He also knew that she had possession. This was sufficient notice. From what has been said in this opinion in regard to the evidence, it will sufficiently appear that there was enough evidence on which to base the fourth instruction. We will not go into a detailed examination of the evidence on the point of excessive damages, but we are fully satisfied that, as to the amount of recovery, the evidence is sufficient.

This is a case where all the natural equities are strongly in defendant in error's favor. She furnished the seed and did the plowing and sowed the rye, and naturally should receive the benefits arising from her labor and expenses.

In such case where the evidence fairly supports the verdict of the jury, it always gives the court great pleasure to be able to sustain it.

Finding no error in the record, the judgment of the court below is affirmed.

*Judgment affirmed.*